

**SIGNED this 28th day of October, 2014.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 03-55807-CAG |
| | § | |
| AMPAM POWER PLUMBING, L.P., | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |

| | | |
|---|---|---|
| AMPAM POWER PLUMBING, L.P. | § | |
| NOW POWER PLUMBING, INC., | § | |
|     Plaintiff. | § | |
| | § | |
| v. | § | ADVERSARY NO. 14-05037-CAG |
| | § | |
| CAPSTONE BUILDING CORPORATION, | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S AMPAM POWER
PLUMBING, L.P., NOW POWER PLUMBING, INC., MOTION FOR SUMMARY
JUDGMENT (ECF NO. 5)**

Came on to be considered the above-numbered adversary proceeding and, in particular, Plaintiff AMPAM Power Plumbing L.P., now Power Plumbing, Inc.'s, Motion for Summary Judgment (ECF No. 5) ("Summary Judgment Motion") filed July 25, 2014, responses, and

1

supporting evidence. For the reasons provided herein, the Court is of the opinion that Plaintiff's Summary Judgment Motion should be GRANTED.

## JURISDICTION

Although neither of the parties raised the issue of whether the Court has constitutional authority enter a final judgment, federal courts have an ongoing duty to examine their subject-matter jurisdiction, whether the issue is raised by the parties or sua sponte by the court. *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). In *Stern v. Marshall*, the United States Supreme Court held that a bankruptcy court must have *both* statutory and constitutional authority to enter final judgment on certain state law claims. *Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011) (finding that the bankruptcy court lacked the "judicial Power of the United States" under Article III of the United States Constitution to enter final judgment on a state law counterclaim).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Although Debtor received a discharge of its debts over ten years ago, bankruptcy courts in the Fifth Circuit maintain subject matter jurisdiction post-confirmation for such matters as enforcing and interpreting the scope of a debtor's discharge order—even after the bankruptcy case is closed. *Jimmy Williams, Sr., et. al v. Placid Oil Co. (In re Placid Oil Co*.), 463 B.R. 803, 818 (Bankr. N.D. Tex. 2012) (citing *Bradley v. Barnes (In re Bradley),* 989 F.2d 802 (5th Cir. 1993)) *aff'd*, 753 F.3d 151 (5th Cir. 2014).

Even after *Stern*, bankruptcy courts have the constitutional authority to hear and finally determine dischargeability of debts in bankruptcy cases. *Deitz v. Ford (In re Deitz),* 469 B.R. 11, 23-24 (B.A.P. 9th Cir. 2012) *aff'd*, 760 F.3d 1038 (9th Cir. 2012). Determining the scope of

a debtor's discharge is a fundamental part of the bankruptcy process. *Farooqi v. Carroll (In re Carroll),* 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011). As the *Farooqi* court explained:

> Congress clearly envisioned that bankruptcy courts would hear and determine all core proceedings, 28 U.S.C. § 157(b)(1), which include, as relevant here, "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I). The Supreme Court has never held that bankruptcy courts are without constitutional authority to hear and finally determine whether a debt is dischargeable in bankruptcy. In fact, the Supreme Court's decision in *Stern* clearly implied that bankruptcy courts have such authority when it concluded that bankruptcy courts had the constitutional authority to decide even state law counterclaims to filed proofs of claim if the counterclaim would necessarily be decided through the claims allowance process. *Stern,* 131 S.Ct. at 2618.

*Id*. Because this case involves a determination as to the dischargeability of particular claims, this Court has both statutory and constitutional authority to enter a final judgment.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Bankruptcy Procedure 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of a quality sufficient so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita,* 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts"); ***Anderson v. Liberty Lobby, Inc.****,* 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." ***LeMaire v. Louisiana***, 480 F.3d 383, 390 (5th Cir. 2007). In determining whether a genuine issue of material fact exists, the non-moving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. A genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts. ***Leon Chocron Publcidad Y Editoria, S.A. v. Jymm Swaggart Ministries***, 990 F.2d 1253 (5th Cir. 1993).

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 13, 2003 ("Petition Date"), Plaintiff/Debtor, AMPAM Power Plumbing, L.P. (now Power Plumbing, Inc.) ("Power"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Power's Chapter 11 Plan of Reorganization was confirmed on July 30, 2004 ("Confirmation Date"). After the Petition Date but before the Confirmation Date, Power and Defendant/Claimant, Capstone Building Corporation ("Capstone"), entered into a contract for Power to perform plumbing services for a residence hall complex at Sam Houston State University (the "Project").

The contract specified that Power's work was to be finished by July 14, 2004. Power's work was largely completed on the Project by July 30, 2014—save for punch list items and a meeting to be attended by a Power representative. After the contract between Power and Capstone was entered into but before the Confirmation Date, Power apprised Capstone of its bankruptcy proceeding. On August 13, 2004, the architectural firm on the Project issued a Certificate of Substantial Completion, and Capstone remained unaware of any possible issues with regard to Power's work until February 16, 2011.

Capstone filed a Third-Party Petition against Power in Cause No. 13-26476, *Texas State University Board of Regents v. American Campus Development, et al*, pending in the 12th Judicial District Court of Walker County, Texas (the "State Court Suit"). Capstone has asserted contractual indemnity and/or contribution relating to Power's work on the Sam Houston State Project. Power reopened its Chapter 11 Case on May 6, 2014 and filed this adversary proceeding. Power now moves for summary judgment finding that all claims Capstone held in relation to Power's work completed on the Sam Houston State Project were discharged by virtue of the Confirmation Order and therefore, Capstone must dismiss its claims against Power in the State Court Suit.[1]

---

[1] Although not mentioned in Capstone's Brief In Opposition (ECF No. 6), in Capstone's Answer to Power's Original Complaint (ECF No. 3), Capstone contends that its claims are covered by insurance and such insurer's obligations and liabilities were not discharged. While normally a debtor's discharge of its debts does not affect its liability insurers, here, in 2008, the Court entered an Order Granting Plan Agent's Motion For An Order Enforcing Compliance With The Plan And Discharge Injunction, And Clarifying Certain Provisions Of The Plan And Confirmation Order (the "2008 Order"). Debtor sought and obtained Court authorization to acquire insurance coverage from ACE American Insurance Company ("ACE") and later renewed the coverage after the Confirmation Date. The Chapter 11 Plan allowed claimants to seek insurance recovery against Debtor's pre-confirmation insurance policies; however, claimants could not seek recovery against the Reorganized Debtor's Insurance Policies issued after the Confirmation Date. After the Confirmation Date, some general contractors and/or builders sought recovery for contractual indemnity against the ACE. ACE began accepting those claims, fearful of potentially being subject to bad faith claim for denying coverage. Power argued that by paying these claims, ACE was effectively reviving claims discharged by the bankruptcy, particularly given the structure of the insurance policies that required Power to pay large percentages of such claims. After considering the unique circumstances concerning Power's insurance contract with ACE, the Court specifically barred Power's pre-bankruptcy claimants from recourse "with respect to the Debtors, the Reorganized Debtors, and their respective assets and property, including but not limited

#### DISCUSSION

Any claims that Capstone could have had against Power at the Confirmation Date were future claims. Future claims are those claims which arise from a debtor's pre-bankruptcy conduct but do not manifest any injury to claimants until after confirmation of the debtor's plan. ***Fairchild Aircraft Inc. v. Campbell (In re Fairchild Aircraft Corp*.**), 220 B.R. 909, 915-916 (Bankr. W.D. Texas 1998). Treatment of these future claims involves two competing concerns: the Bankruptcy Code's goal of providing a debtor with a fresh start by resolving all claims arising from the debtor's conduct prior to its emergence from bankruptcy; and the rights of individuals who may be damaged by that conduct but are unaware of the potential harm at the time of the debtor's bankruptcy. **Wright v. Corning**, 679 F.3d 101, 105 (3rd Cir. 2012) *cert. denied*, 133 S. Ct. 1239, 185 L. Ed. 2d 177 (2013). To determine the proper treatment of such claims under the Bankruptcy Code, it is essential first to ascertain whether the claimant held a pre-confirmation claim and then determine whether the pre-confirmation claim may be discharged by confirmation within the restraints of constitutional due process.

**A.** <u>**Classification of Capstone's Claims as Pre-Confirmation**</u>

A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Congress intended the term "claim" to have the "broadest possible definition … [including] all legal obligations of the debtor, no matter how remote or contingent." H.R.Rep. No. 95-595, at 649 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963. Although not defined by the Bankruptcy Code, the Fifth Circuit

---

to, the ACE Policies and any other insurance policies purchased on or after August 2, 2004, or providing for insurance coverage to the Debtors or Reorganized Debtors on and after August 2, 2004." Although referenced during oral argument, Capstone did not provide a copy of the 2008 Order to the Court and did not move for any relief based on the insurance policies. Nevertheless, for the sake of completeness, the Court finds that the 2008 Order has no effect whatsoever on the Court's findings on Power's Motion for Summary Judgment.

defines a claim as contingent if the debt "is one which will be called upon to pay only upon the occurrence or happening of an extrinsic event that will trigger the liability of the debtor to the alleged creditor." **Beaumont v. Durkay (*In Matter of Ford*)**, 967 F.2d 1047, 1051 (5th Cir. 1992). While a claim may not have yet accrued under state law, it may nonetheless be treated as a contingent claim within the meaning of the Bankruptcy Code. **Riverwood Int'l Corp. v. Olin Corp. (*In re Manville Forest Prods. Corp.*)**, 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998*) aff'd*, 209 F.3d 125 (2d Cir. 2000); *see also* **Hassanally v. Republic Bank (*In re Hassanally)***, 208 B.R. 46, 50 (9th Cir. BAP 1997) (holding that while state law determines the existence of a claim, federal law determines when a claim arises for bankruptcy purposes).

Among the circuits, several approaches have emerged on how broadly the term "claim" is to be interpreted, particularly in the context of future claims. In **Lemelle v. Universal Mfg. Corp**., the Fifth Circuit adopted the *Piper* pre-petition relationship approach. 18 F.3d 1268, 1277 (5th Cir. 1994) (citing **In re Piper Aircraft Corp**., 162 B.R. 619 (Bankr. S.D. Fla. 1994)); *see also* **Wheeler v. Magdovitz (Matter of Wheeler)**, 137 F.3d 299, 301 (5th Cir. 1998) (stating the Fifth Circuit has "thereby adopt[ed] the *Piper* middle ground approach"). Under the pre-petition relationship test state in **Piper**, a claim arises at the time of the "debtor's [tortious] conduct forming the basis of liability *only if* the claimant had some type of specific relationship with the debtor at that time." **Lemelle***,* 18 F.3d at 1276 (emphasis in original).

1. Contractual Relationship Between Capstone and Power

The Fifth Circuit has previously found that a contractual relationship between the debtor and claimant is "[clearly] a pre-petition relationship sufficient to meet the *Piper* and *Lemelle* requirement." **Wheeler**, 137 F.3d at 301 (1998). In **Wheeler**, the Fifth Circuit considered whether debtor's state law legal malpractice claim against his bankruptcy counsel was a pre-

7

confirmation claim and therefore property of the Chapter 7 bankruptcy estate. *Id.* at 300. The court found that the debtor's attorney-client contractual relationship clearly met the standard previously adopted in *Lemelle*—of "a pre-petition contact, privity or other relationship between the tort-feasor and the injured claimant." *Id.* at 301. Based on the contractual relationship in *Wheeler*, the malpractice claim arose pre-bankruptcy and was property of the estate, despite not manifesting any injury until years after confirmation of debtor's Chapter 7 plan. *Id.* at 300.

Power and Capstone both agree that the parties entered into a contract and that substantial work was completed before the confirmation of Power's Chapter 11 Plan. The Code provides that confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(a)(1)(A). Therefore, a "claim" under Chapter 11 of the Bankruptcy Code extends to post-petition, but pre-confirmation conduct. *Wright*, 679 F.3d at 107. A claim arising from such a pre-confirmation, non-executory contract is similar to any other pre-petition claim and would be discharged by confirmation of the Chapter 11 plan. *Manville Forest Products Corp.*, 225 B.R. at 865. By virtue of the contract entered into by Power and Capstone and the substantial amount of work performed prior to confirmation, the parties had a pre-confirmation relationship that satisfies *Piper* and *Lemelle*.[2] Therefore, Capstone's claims arose at the point in time at which Power's wrongful conduct forming the basis for liability in the State Court Suit occurred.

2. Time of Power's Conduct Forming the Basis for Liability

In the State Court Suit, Capstone asserts claims for common law indemnity and/or contribution in relation to Power's work on the Sam Houston State Project. The contract

---

[2] The claimants in *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994) and *In re Piper Aircraft Corp.*, 162 B.R. 619 (Bankr. S.D. Fla. 1994) held pre-petition claims. As *Wright* instructs, pre-petition and pre-confirmation claims are treated identically in the context of future claims. 679 F.3d at 107. Therefore, for clarity, the Court will use the term "pre-confirmation."

8

contemplated a specific completion date of July 14, 2004 and substantially all of Power's work was completed by July 30, 2004. Capstone specifically points to the following occurrences to show that Power completed work on the Project post-confirmation: (1) possible punch list items that were not completed by the Confirmation Date; (2) meetings that Power's representatives attended post-confirmation; and (3) a one-year warranty executed two days after confirmation. Capstone concedes that these post-confirmation actions do not independently form the basis for liability in the State Court Suit. Rather, Capstone argues that these actions are illustrative of its due process argument.

Although Power had contact with the Project post-confirmation, the basis for liability in the State Court Suit is the work Power completed prior to Confirmation Date—not these limited post-confirmation contacts. As a result of the parties' pre-confirmation contractual relationship, the claim arose at the time the conduct giving rise to liability in the State Court Suit took place, even though the possible resulting injury from this conduct did not yet manifest by the Confirmation Date. *See **In re Hassanally***, 208 B.R. at 54 (finding that the fact that the consequences of the wrongful conduct which formed the basis for the contingent claim materialized at a later date does not alter the character of the claim as pre-confirmation). Therefore, Capstone held pre-confirmation claims against Power for their work on the Sam Houston State Project.[3]

---

[3] A number of courts have held or at least suggested that a breach of contract claim arises at the time the contract was entered into because a party to an ordinary contract should reasonably anticipate that the other party will breach or has made misrepresentations with respect to the contract, whether or not it was aware of any breach or misrepresentation when the petition was filed or before the claims bar date. ***Conseco, Inc. v. Schwartz (In re Conseco, Inc.)***, 330 B.R. 673, 686 (Bankr. N.D. Ill. 2005); *see also **In re Russell***, 193 B.R. 568, 571 (Bankr.S.D.Cal. 1996) ("It is within the fair contemplation of parties entering into a contract that the other party may breach it, or have made representations to induce the making of the contract. Thus, a contingent claim arises at that point, although it may never mature."); ***In re Manville Forest Prods. Corp.***, 225 B.R. 862, 867 (Bankr. S.D.N.Y. 1998) *aff'd*, 209 F.3d 125 (2nd Cir. 2000) ("Indemnity agreements are intended to establish contingent future obligations immediately upon execution … It is irrelevant whether the event triggering the Debtor's liability under the Indemnity Agreements occurred before or after the petition was filed.").

B. **Discharge of Capstone's Claims Against Power**

While the broad definition of claim serves debtors' interests in receiving a fresh start, this definition is restrained by the constitutional protections of due process. Due process requires notice to be "reasonably calculated, under all circumstances, to inform interested parties of the pendency" of a proceeding. *Jimmy Williams, Sr., et al v, Placid Oil Co. (In the Matter of Placid Oil Co.)*, 753 F.3d 151, 154 (5th Cir. 2014) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950)). The level of notice required depends on a creditor's status as known or unknown. *Placid Oil*, 753 F.3d at 154. Actual notice is required only for known creditors, which the Fifth Circuit defines as those creditors that debtor possess specific information about a manifested injury against, to make the claim more than merely foreseeable. *Id*. at 155. While Capstone may actually be an unknown creditor, it is undisputed that Capstone received actual notice of the pendency of Power's bankruptcy petition. This satisfies even the more onerous due process notice requirements to known creditors.

Capstone does not dispute that it received actual notice, but rather argues that because Capstone was not aware of any possible defect in Power's work at the time Capstone received notice, Capstone was unable to protect its rights. Therefore, discharge of Capstone's claims would deprive Capstone of its due process rights. Nevertheless, the Fifth Circuit recently held that claimants are not deprived of due process even where, at the time they receive notice of the bankruptcy proceeding, they are unaware of any injury. *See generally* **Placid Oil,** 753 F.3d 151 (holding that a debtor's publication in a newspaper of national circulation satisfied due process requirements for discharge where decedent and claimants in a wrongful death action were unaware of asbestos exposure and resulting mesothelioma at the time notice was published). In *Placid Oil*, the harmful conduct and resulting injury were unknown to claimants for over fifteen


years after the debtor obtained a discharge. *Id*. at 153. Nonetheless, after acknowledging the difficulty the claimants faced, the Fifth Circuit found that the claimants' due process rights were not violated by holding their pre-petition claim had been discharged. *Id*. at 158.[4]

Given that the parties' had a pre-confirmation contractual relationship and that it is undisputed Capstone received actual notice of pendency of Power's bankruptcy before the Confirmation Date, Capstone's due process rights were even more protected than the claimants in *Placid Oil*. Therefore, despite the latency in manifestation of any injury, a finding that Capstone's claims against Power were discharged by the Confirmation Order does not violate Capstone's due process rights. Because Capstone received actual notice of Power's bankruptcy comporting with the constitutional requirements of due process, all pre-confirmation claims relating to Power's work on the Sam Houston State Project were discharged by the Confirmation Order.

## CONCLUSION

Having gone through the facts of the case and considered the arguments made by the parties, this Court finds that (1) Capstone held pre-confirmation claims against Power and (2) those claims were discharged by Confirmation Order entered in Power's Chapter 11 bankruptcy proceeding.

A separate order granting the Plaintiff's Motion for Summary Judgment will be entered.

---

[4] While scholars and judges have criticized the severity of including claims whose holders were not readily identifiable at the time of bankruptcy, these critiques have been limited to unknown claimants receiving only constructive notice. *Jimmy Williams, Sr., et al v. Placid Oil Co*. (*In Matter of Placid Oil*), 753 F.3d 151 (5th Cir. 2014) (Dennis, J., dissenting) ("Unknown, future claimants, even if they receive notice of a bankruptcy proceeding, are often unable to recognize that their rights will be affected by the bankruptcy, for instance because they are unaware that the debtor has exposed them to toxic substances or because they have yet to manifest any injuries by the time the debtor files for bankruptcy."); *Hexcel Corp. v. Stepan Co.* (*In re Hexcel Corp*.), 239 B.R. 564, 571 (N.D. Cal. 1999) ("It is difficult to imagine, however, how the announcement of a bankruptcy proceeding published in the *Wall Street Journal* could possibly satisfy due process concerns for a potential creditor who had no way of knowing that it may have a claim against the debtor some time in the future."); Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?*, 78 Am. Bank. L.J. 339, 351–52 (2004) (finding that even if unknown creditors see notice, "they could not recognize themselves as affected in any way by the bankruptcy case and will, therefore, take no action to ensure their interests are represented.").

# # #